UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APEX EMPLOYEE WELLNESS SERVICES, INC.,
as assignee of Summit Health, Inc.,

                          Plaintiff,

– against –

APS HEALTHCARE BETHESDA, INC.,

                          Defendant.

**OPINION AND ORDER**

11 CIV. 9718 (ER)

Ramos, D.J.:

     APEX Employee Wellness Services, Inc. ("Plaintiff" or "APEX"), as the assignee of Summit Health, Inc. ("Summit"),[1] brought this breach of contract action against APS Healthcare Bethesda, Inc. ("Defendant" or "APS"), alleging that APS failed to pay the full amount due under their service contract. Doc. 1. Trial in this matter concluded on August 1, 2014, with a jury verdict awarding Plaintiff $1,522,176. Doc. 111. Judgment in this amount was entered on August 4, 2014. Doc. 112.

     On August 18, 2014, Plaintiff moved the Court for an order awarding Plaintiff litigation expenses, including attorneys' fees and interest on the litigation expenses, Doc. 113, but the Court deferred decision pending appeal. *APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11 CIV. 9718 (ER), 2017 WL 456466, at *13 (S.D.N.Y. Feb. 1, 2017). On February 1, 2018, the United States Court of Appeals for the Second Circuit affirmed the Court's decision. *APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*,

---

[1] Summit assigned all claims against APS relating to this matter to APEX on April 17, 2014, and filed a motion to substitute APEX as a Plaintiff in this action. *See* Doc. 114, 2. APS did not oppose the motion, and the Court granted the motion on May 27, 2014. Doc. 81.

725 F. App'x 4, 7 (2d Cir. 2018). APEX now moves for supplemental litigation expenses and interest. Doc. 176. For the reasons set forth below, the Court grants APEX's counsel its fees.

I. **Background**

The Court assumes the parties' familiarity with the facts of this case but provides a brief history here: APS administers state and local government health plans and provides healthcare services to government employees. Doc. 1 ¶ 4. APS entered a general contract with the State of Tennessee, pursuant to which APS agreed to provide health care services to state employees who had enrolled in the state's "ParTNers for Health" program. Doc. 47 ¶ 12. To perform its contract with Tennessee, APS entered into a subcontract with Summit (the "Agreement"). Doc. 1 ¶ 3. APS and Summit interpreted the Agreement differently and Summit sued APS for breaching the Agreement. A jury eventually awarded APEX $1,522,176 in damages for APS's breach. *APEX Employee Wellness Servs., Inc.*, 2017 WL 456466, at *5. Shortly thereafter, APEX moved for attorneys' fees, Doc. 113, and APS filed notices of appeal, Docs. 125, 159. The Court deferred decision on the motion for attorneys' fees pending appeal. Doc. 151. In 2018, the Second Circuit affirmed the Court's decision. *APEX Employee Wellness Servs., Inc.*, 725 F. App'x at 6. APEX now moves "[t]he Court for an order awarding Plaintiff (i) $3,077,897.21 in total litigation expenses, including attorneys' fees; (ii) $944,710.97 in total interest on those litigation expenses as of March 29, 2018; and (iii) an additional $743.38 in interest on those expenses per day." Doc. 176.

II. **Discussion**

The Court has diversity jurisdiction over this case. *APEX Employee Wellness Servs., Inc.*, 2017 WL 456466, at *12. Pursuant to the Agreement, Doc. 116-1 at ¶ 13, and the parties' assumptions, Doc. 182, 17–20, Doc. 186, 8–10, New York law applies.

Under New York law, "the prevailing litigant ordinarily cannot collect its reasonable attorneys' fees from its unsuccessful opponents." *Hunt v. Sharp*, 649 N.E.2d 1201, 1202 (N.Y. 1995) (internal citations omitted). "The exception is when an award is authorized by agreement between the parties . . . ." *Congel v. Malfitano*, 101 N.E.3d 341, 352 (N.Y. 2018) (internal quotation marks and citations omitted). "[A] court should not infer a party's intention to waive the benefit of the [general] rule unless the intention to do so is unmistakably clear from the language of the promise." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1186 (N.Y. 2018) (international quotation marks and citation omitted).

Here, the Agreement clearly entitles the prevailing party to attorneys' fees and interest. It provides as follows:

> In any litigation or arbitration proceeding relating to this Agreement, the prevailing party as determined by the judge or arbitrator will be entitled to recover all reasonable expenses of litigation or arbitration proceeding, including attorney fees at trial and on any appeal or petition for review and interest at the statutory rate, from the date such expenses are incurred.

Doc. 116-1 ¶ 26. The Agreement defines "prevailing party" as "the party that prevails (whether affirmatively or by means of a successful defense) with respect to claims having the greatest value or importance as reasonably determined by the arbitrator or court." *Id.*

"In determining the appropriate value of an attorney's services in arriving at a reasonable fee, the court should consider, inter alia, the difficulty of the question involved, the skill required to handle the problem, and the amount of time expended on the case." *M. Sobol, Inc. v. Wykagyl Pharmacy, Inc.*, 723 N.Y.S.2d 88, 89 (N.Y. App. Div. 2001). "[T]he determination must be based upon a demonstration of the hours reasonably expended on the litigation and what is reasonable compensation for the attorney based upon the prevailing rate for similar work in the community." *RMP Capital Corp. v. Victory Jet, LLC*, 32 N.Y.S.3d 231, 236 (N.Y. App. Div. 2016).

3

Initially, "the burden of showing the 'reasonableness' of the fee lies upon the claimant." *Matter of Karp*, 537 N.Y.S.2d 510, 515 (N.Y. App. Div. 1989). A movant may carry this burden with statements that "show the work that was performed each day and contain an abundance of detail." *Red Apple Supermarkets, Inc. v. Malone & Hyde, Inc.*, 687 N.Y.S.2d 50, 51 (N.Y. App. Div. 1999). Once a movant provides this evidence, the burden shifts to the non-movant and the non-movant must, then, "point out all instances of irregularity or dispute, not just a few examples." *Id.*

After considering these issues, "[t]he determination of a reasonable attorney's fee is generally left to the discretion of the trial court, which is often in the best position to determine those factors integral to the fixing of a reasonable fee." *Miller Realty Assocs. v. Amendola*, 859 N.Y.S.2d 258, 261 (N.Y. App. Div. 2008).

Here, APEX has submitted invoices for all of the work that its law firm performed in this and a closely related case. Docs. 116-16–34; Docs. 178-4–9. These invoices contain hundreds of entries. *Id.* Each entry contains a description of a litigation-related task, the name of the person who performed the task, the amount of time that that person spent on the task, and the date when the task was performed. *Id.* The vast majority of the descriptions provide an abundance of detail. *Id.* As a result, APEX has carried its initial burden and APS must "point out all instances of irregularity or dispute, not just a few examples." *Red Apple Supermarkets, Inc.*, 687 N.Y.S.2d at 51.

In its opposition to APEX's original motion for attorneys' fees, Doc. 132, and in its opposition to APEX's supplemental motion for attorneys' fees, Doc. 182, APS raises ten issues. The Court addresses each of these disputes in turn.

First, APS argues that "[t]he Court should substantially reduce APEX's fee request by applying a ceiling taking into account the amount at issue and awarded to APEX at trial." Doc. 132, 10; Doc.182, 6–8 (reiterating this argument for its opposition to the supplemental request for attorneys' fees). To support this argument, APS cites the Second Circuit's observation that an attorneys' fees "award in excess of the amount *involved* in a litigation . . . would normally appear to be unreasonable." *CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013) (internal quotation marks omitted). *Id.*

The Court does not read *Carco Group*, to stand for the proposition that APS alleges. Indeed, *Carco Group* merely notes that the amount involved in a litigation serves as "a starting point in the process of ultimately determining whether a fee award is reasonable" and that "[r]egardless of the relationship to the amount in controversy, a court must determine whether the fee arrangement between the prevailing party and counsel was reasonable." *Id.* at 86. Importantly, in *Carco Group*, the Second Circuit reversed the district court that capped attorneys' fees and held, "As there is no rule requiring a fee award to be proportionate to the damages awarded, the District Court erred in imposing the twenty-percent reduction for this reason." *Id*. The Court thus declines APS's invitation either to cap APEX's fees at the amount of damages APEX actually recovered or to give the amount-in-controversy factor dispositive weight.

Second, APS contends that the Court should only award attorneys' fees for motions on which APEX prevailed. Doc. 132, 12–17 (arguing that APEX did not prevail in the trial's primary evidentiary issue); Doc. 132, 22–24 (claiming that APEX did not prevail on the withdrawn motion for judgment on the pleadings); Doc. 182, 9 (asserting that APEX did not prevail on an unsuccessful cross-appeal). The Court rejects this argument because it contravenes

5

the plain language of the Agreement's fee shifting provision. Here, the Agreement defines "prevailing party" as "the party that prevails (whether affirmatively or by means of a successful defense) with respect to claims having the greatest value or importance as reasonably determined by the arbitrator or court." Doc. 116-1 ¶ 26. In instructing the Court to weigh the value of each party's respective successes and then to determine a single prevailing party, the Agreement expresses the parties' clear intention to define the prevailing party with respect to the entire litigation, not an individual claim or motion, and to award that party reasonable attorneys' fees in the entire suit.

Third, APS maintains that APEX may not recover attorneys' fees on fees. Doc. 182, 8. The Court agrees. Under New York law, "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1266 (2d Cir. 1987) (citing *Doyle v. Allstate Insurance Co.,* 136 N.E.2d 484, 487 (N.Y. 1956)). In *F.H. Krear*, the Second Circuit denied a request for fees on fees after finding that, although the contract provided that the prevailing party would have the right to reasonable attorney's fees, it lacked "specific language to indicate that time spent in justifying a fee application was to be included." *Id.* at 1267. APEX has not provided any contrary authority. The Agreement here provides that "the prevailing party . . . will be entitled to recover all reasonable expenses of litigation or arbitration proceeding, including attorney fees at trial and on any appeal or petition for review and interest at the statutory rate, from the date such expenses are incurred." Doc. 116-1, ¶ 26. In the absence of "specific language to indicate that time spent in justifying a fee application was to be included," the Court follows *F.H. Krear* and holds that the contractual language does not entitle APEX to claim fees on fees.

Fourth, APS states that APEX may not recover fees for the action filed against the APS affiliates because it was unreasonable for APEX to bring a separate action against them. Doc. 182, 10. Specifically, APS argues that it was unreasonable for APEX to bring the separate action because APEX could have added the affiliates to its original complaint but "simply failed to do so." *Id.* APEX responds by declaring that it filed a complaint against the affiliates "as a precautionary measure," Doc. 178 ¶ 14, because, as it indicated in an earlier letter, "[r]ecent communications with counsel for defendant, however, have raised concern that APS Healthcare Bethesda, Inc. may not have the financial ability to satisfy a judgment." Doc. 82, 1. The Court agrees with APS because APEX made the strategic decision not to name the affiliates in the original action. As a result, the Court grants APS's request to deny all fees generated by the related action.

Fifth, APS asserts that APEX should not recover all of the attorneys' fees that it requests because APEX's lawyers describe some of their services in vague terms. Doc. 132, 20 (making this argument for the original fee application); Doc. 182, 11 (making this argument for the supplemental fee application). To make this argument, APS provides a chart of allegedly vague entries for the initial fee application, Doc. 133-3, and for the supplemental fee application, Doc. 183-7. In all, these hours represent a fraction of the total hours at issue in this case. The Court has reviewed these entries and finds that they do not require a reduction. Each entry provides sufficient information concerning a litigation-related task, the person who performed the task, and the amount of time that the person spent on the task. *Id.* Some entries include more details than others but, given the details provided and the Court's knowledge of the case, the Court finds that APEX's records are not so vague so as to prevent the Court from determining whether the fees are reasonable. As a result, on this issue, the Court will not reduce APEX's fee awards.

Sixth, APS argues that the Court should reduce APEX's fee award because its lawyers block-billed their time, i.e., grouped multiple tasks into a single time entry. Doc. 132, 21–22; Doc. 182, 11–12. To make this argument, APS provides a chart of block-billed entries. Doc. 133-4 (chart for the original fees request); Doc. 183-8 (chart for the supplemental fees request).

The Court agrees with APS. "[B]lock billing is common practice among law firms," *Daniele v. Puntillo*, 949 N.Y.S.2d 365, 367 (N.Y. App. Div. 2012), and "there is no per se rule as to the maximum or minimum that block-billed fees should be reduced to account for unnecessary work." *Cmty. Counseling & Mediation Servs. v. Chera*, 982 N.Y.S.2d 469, 471 (N.Y. App. Div. 2014). Despite the absence of a per se rule, a number of recent New York cases have found that a 10% reduction in block-billed hours is appropriate in cases where the descriptions are clear in all other respects. *See Silverstein v. Goodman*, 979 N.Y.S.2d 308, 310 (N.Y. App. Div. 2014) (upholding a decision that reduced block-billed hours by 10%); *Cmty. Counseling & Mediation Servs. v. Chera*, 982 N.Y.S.2d 469, 471 (N.Y. App. Div. 2014) ("[W]e find that, under the circumstances of this case, a 10% reduction should be applied to those hours that were block-billed."). In light of this trend and the fact that the entries allow, with a few exceptions, the court to determine the tasks and its relation to the litigation, the Court will reduce the block-billed hours included in the two block-billed entries charts by 10%.

Seventh, APS claims that APEX spent an excessive amount of time on its motion for summary judgment, Doc. 132, 25, depositions, Doc. 132, 25–26, writ of mandamus, Doc. 182, 12–13, complaint against APS's affiliates, Doc. 182, 13, motion to enforce a judgment, Doc. 182, 13, and opposition to a request to extend time, Doc. 182, 13. APS also alleges that one paralegal spent an excessive amount of time on the case. Doc. 132, 26. As evidenced by the trial, the forty-four page summary judgment opinion, Doc. 116–2, and the excellent advocacy on

behalf of each of the parties, the Court finds that this multi-million dollar dispute raised exceedingly difficult questions that required highly skilled lawyers. As a result, it was reasonable for APEX's counsel to spend the time it billed on each issue and the Court denies APS's request to reduce APEX's fees for these particular tasks, with one exception.

The one exception is the time that APEX spent in opposition to APS's request for an extension of time to file its appeal brief. The Court finds that it was unreasonable for counsel to spend 18.52 hours on this task given that it resulted in a four-page brief with a single case citation. Doc. 183-4; Doc. 183-10. As a result, the Court will allow APEX to count only half of these hours towards its fees request.

Eighth, APS states that, for the purpose of this fee application, the Court should reduce the time that APEX's counsels spent traveling by 50%. Doc. 132, 18 n. 12; Doc. 182, 13. To make this argument, APS cites *Daiwa Special Asset Corp. v. Desnick*, No. 00 CIV. 3856 (SHS), 2002 WL 31767817, at *1 (S.D.N.Y. Dec. 3, 2002). That case, decided within this District, interpreted New York contract law and concluded that, "when determining attorneys' fees, courts in the Southern District of New York generally do not credit travel time at the attorney's full hourly rate and customarily reduce the amount awarded for travel to at least 50% of that rate." *Id.* at *4. APEX does not contest this point. As a result, the Court will reduce APEX's attorneys' fees for travel time by 50%.

Ninth, APS asks the Court to reduce the rates charged by APEX's counsel. Doc. 132, 27–34; Doc. 182, 14–17. The Court disagrees. In New York, "the reasonable hourly rate for an attorney should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented." *Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311 (N.Y. App. Div. 2004) (internal quotation marks and brackets omitted). "Although a fee arrangement

9

between the attorney and his or her client may be indicative of what is a reasonable fee, it is not determinative." *Manufacturers & Traders Tr. Co. v. Dougherty*, 782 N.Y.S.2d 477, 479 (N.Y. App. Div. 2004). In the original fees application, APEX's counsel charged between $175 per hour for the most junior paralegal and $925 per hour for the most senior partner. Doc. 116-35. In its supplemental fees application, APEX's counsel charged between $185 per hour for the most junior paralegal and $1058.25 for the most senior partner. Doc. 183-5. APS claims that the Court should not award this fee because lawyers within this community do not charge similar rates for similar services and because APEX's counsel has not provided the Court with each timekeeper's resume.

The Court finds neither argument persuasive. With regards to the rates charged within this community, a court within this District has approved of comparable rates in an equally complex contract dispute. *See, e.g.*, *U.S. Bank Nat'l Assoc. v. Dexia Real Estate Capital Markets*, No. 12 CIV. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving "rates ranging from $250 per hour to $1,055 per hour" for multi-million dollar "complex commercial litigation"). With regards to the evidence of counsel's skill and experience, it is true that APEX did not provide each timekeeper's resume, but APS has not questioned their experience and the Court has had ample opportunity to review counsel's submissions and to observe them at trial. The Court is also familiar with the law firm and its reputation. As a result, the Court "see[s] no reason, in the absence of any evidentiary challenge, to reduce the plaintiff's counsel's normal rate." *Getty Petroleum Corp. v. G.M. Triple S. Corp.*, 589 N.Y.S.2d 577, 578 (N.Y. App. Div. 1992). APEX may receive fees for the rate at which its counsel billed at the time APEX received each invoice.

Tenth, APS argues that the interest on APEX's attorneys' fees should begin accruing midpoint between the date of the final judgment and the fee award. Doc. 182, 17-20. To make this argument, APS cites *Fifth & 106th St. Assocs. v. Harris*, 961 N.Y.S.2d 358 (App. Term 2012), *Negron v. Goldman*, 819 N.Y.S.2d 849 (App. Term 2006), and *Solow Mgmt. Corp. v. Tanger*, 797 N.Y.S.2d 456 (N.Y. App. Div. 2005). In these three contract cases, the Appellate Division held that interest on attorneys' fees should begin to run at the midpoint between when the party prevailed and when the court decided the fee application.

The Court, however, finds these cases distinguishable. In *Solow Mgmt. Corp.*, which the other two cases followed, the Appellate Division held that interest should begin to run at this midpoint because "[i]n the ordinary contract . . . action, interest is computed on damages for breach of contract . . . and flows from the date of the breach" and because attorneys' fees "represent a conditional award or prerogative which does not mature until the underlying action or proceeding has been determined." *Id.* at 456. However, these cases focus on general contract principles and do not discuss the language of the contracts at issue. Contrariwise, the instant Agreement expressly provides that "the prevailing party . . . will be entitled to recover all reasonable expenses of litigation . . . , including attorney fees at trial and on any appeal or petition for review and *interest at the statutory rate, from the date such expenses are incurred*." 116-1 ¶ 26 (emphasis added). Because the Agreement expressly grants "interest at the statutory rate, from the date such expenses are incurred," *id.*, the Court will apply the clear language of the Agreement.

### III. CONCLUSION

For the reasons set forth above, the Court awards APEX attorneys' fees and interest pursuant to this Opinion and directs the parties to submit an updated joint calculation of

11

attorneys' fees and interest consistent with this Opinion within 14 days.  Interest will not accrue for these 14 days.  The Clerk of the Court is respectfully directed to terminate the motions, Doc. 176.

It is SO ORDERED.

Dated:      November 5, 2018
              New York, New York

                                              Edgardo Ramos, U.S.D.J